## Turley, Appellant, *v.* O'Donnell.

*Negligence—Blasting—Engineer of the United States—Evidence.*

In an action by a woman against an engineer in the employ of the United States government to recover damages for personal injuries a verdict for plaintiff cannot be sustained, where it appears that the plaintiff was injured by being struck by a stone weighing about five pounds which fell upon her porch after the discharge of a blast about 150 feet from her house; that the defendant was overseer of the blasting work for the government, and had acted in regard to the blasting in strict accordance with the instructions of his superior officer; that the defendant at the time the shot was fired was at least half a mile away from the blast which was in charge of two experienced men; and that blasting had been going on at the point in question for three or four weeks without anything but very small stones having been thrown near the plaintiff's house.

Argued April 20, 1911.   Appeal, No. 132, April T., 1911, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1906, No. 445, for defendant n. o. v. in case of Annie Turley v. Charles C. O'Donnell.   Before RICE, P. J., HENDERSON, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before KENNEDY, P. J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict for plaintiff for $125.   Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*Joseph A. Beck,* with him *McKee, Mitchell & Alter,* for appellant.

*J. W. Dunkle,* with him *R. M. Gibson* and *N. S. Williams,* for appellee.

OPINION BY PORTER, J., October 9, 1911:

The plaintiff was struck on the shoulder by a fragment of stone while upon the front porch of her house. The stone, which weighed about five pounds, fell through the tar paper roof of the porch immediately after the sound of a blast had been heard and so the conclusion was drawn that the stone had been thrown into the air by a blasting operation carried on by the United States government on the beach of the Allegheny river, distant about 150 feet from the house. The blasting was done in connection with the construction of the Springdale dam, in which work the defendant was engaged as an employee of the government of the United States, and the plaintiff brought this action against him to recover damages for the alleged injury, averring that the same had been caused by his negligence. The plaintiff recovered a verdict, but the court entered judgment in favor of the defendant non obstante veredicto, and the plaintiff appeals.

The opinion filed by the learned president judge of the court below, which will appear in the report of this case, so fully vindicates the conclusion at which he arrived that it is only necessary that we should briefly consider the questions presented. The work in which the defendant was engaged was not a private undertaking, no rights and duties of a contractor under the government are here involved; the government of the United States was directly engaged in the undertaking and was the employer of this defendant and every man therein engaged. The government was acting through its engineering department; Major Seibert, of the United States army, was the United States engineer of the district, the assistant engineer was Mr. Arras, the immediate superior of this defendant, and the defendant was a civil engineer in the engineering department of the United States army and assigned to duty as overseer of the work upon the Springdale dam. The evidence disclosed that the blasting referred to had to be done upon the ground. The action of the water upon the banks of the river caused washouts and it was necessary,

in order to protect the dam, to place stone in the river below the dam and along the banks for a considerable distance down the stream. These stones were put in place by a crane boat. Many of the stones delivered were too large for the crane to handle and it was necessary that they be split. This operation, as indicated by the evidence, is not technically known as blasting, but is accomplished by a "spring shot," which consists of drilling a hole a short distance into the stone which it is desired to split and putting therein a light charge of giant powder, sufficient to force the stone apart. All this work was done upon the river beach, below the bank, and the house of the plaintiff was situated about 150 feet from where this part of the work was done. This work had been in progress for three or four weeks, and there was no evidence in the case that prior to the shot which plaintiff alleges resulted in her injury anything had occurred which indicated that the work endangered either persons or property. True it is that the plaintiff testified that small fragments of stone "probably the size of a penny or a quarter" had on former occasions been thrown into the yard surrounding her house, but there is no evidence that this was known to this defendant or any other employee of the government, and the plaintiff distinctly testified that no stones had, prior to the occasion in question, been thrown which were large enough to injure any person even if thrown with great force. The evidence established that all the blasting, at least all prior to the shot which caused the injury, had been done in strict accordance with the instructions of Mr. Arras, the superior officer of this defendant. There was no evidence from which a jury should have been permitted to find that the defendant knew or ought to have known that splitting the stone in this manner involved danger to this plaintiff or any other person. No evidence was produced as to the manner in which the stone ought to have been split, nor as to what precautions ought to have been taken in case they were split in the manner selected.

The fact that it was necessary to split the stone at the margin of the river was not disputed. There could, therefore, be no inference that it was negligence to blast in that locality. The burden was upon this plaintiff to show not merely that some person had been negligent, but that this defendant had been guilty of some negligence which caused her injury. There being no negligence inferable from the mere location in which the blasting was done, and no evidence indicating that the manner in which the blasting had been previously carried on involved danger to those in the neighborhood, it follows that the only question is whether the evidence would have warranted a finding that there had been negligence in the firing of the particular shot which caused the injury and for which this defendant was answerable. As the blasting had been carried on for several weeks in a manner which involved no danger to this plaintiff or any other person, this might give rise to an inference that the same method had not been pursued with regard to a shot which threw a fragment of stone weighing five pounds a distance of 150 feet. That particular stone may have been subjected to a very much heavier charge of giant powder and the resulting explosion may have been of much greater violence, but even if it be assumed that this might sustain an inference of negligence upon the part of some person it would not necessarily follow that this defendant was responsible. The evidence upon the part both of plaintiff and defendant clearly established that the shot in question was fired by two men named Conley and Mellon, both of whom had been employed by the government and had been engaged in this particular work during its entire progress, and were shown to be men of experience and skill in work of this kind. The defendant was, at the time the shot was fired, at least half a mile away engaged in looking after some other department of the work. He had personally nothing to do with this particular shot and knew nothing about it. If any person was negligent with regard to that particular shot, it must have been either

Conley or Mellon, or both of them. This defendant was not answerable for their acts, they were not his servants or agents, nor were they engaged upon his work. They were the employees of the government of the United States, as was also the defendant; all three were servants of the government. The government necessarily acts through agents, and in a work of this kind there must be grades of employees, some must be subject to the authority of others. Those who supervise the work do not, however, become the employers of those who are required to obey instructions, in the sense that the former become answerable for the negligence of the latter. They are all fellow servants of their employer, the government of the United States, and one cannot be called to answer for the negligent act of the other in which he has not joined. Even if it be assumed that this defendant had authority to employ and discharge men, the only duty thereby imposed upon him would be to exercise care so as not to employ incompetent or negligent men. There was no evidence that the defendant knew or ought to have known that Conley and Mellon were incompetent, unskillful or careless workmen. There was no evidence which warranted a finding that this defendant, in the discharge of his duty, had failed to exercise that care required of him by the circumstances under which he acted.

The judgment is affirmed.